IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| HEIDI G. FULLMER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 06-1532-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| COMMISSIONER of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ──────────────────────── | ) | |

Merrill Schneider
P. O. Box 16310
Portland, Oregon  97292-0310

Linda Ziskin
3 Monroe Parkway, Suite P, PMB #323
Lake Oswego, Oregon  97035

      Attorneys for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon

Page 1 - OPINION AND ORDER

Britannia I. Hobbs
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon  97204-2902

L. Jamala Edwards
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

   Attorneys for Defendant


KING, Judge:

 Plaintiff Heidi Fullmer brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and

remand for a finding of disability.

## DISABILITY ANALYSIS

 The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

 The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

Page 2 - OPINION AND ORDER

§§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the

burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir.

2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the

claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity,

disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines

whether the claimant has a medically severe impairment or combination of impairments.  A

severe impairment is one "which significantly limits [the claimant's] physical or mental ability to

do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not

have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine

whether the impairment is equivalent to one of a number of listed impairments that the

Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R.

§§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments,

the claimant is conclusively presumed to be disabled.  If the impairment is not one that is

presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the

impairment prevents the claimant from performing work which the claimant performed in the

past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## PROCEDURAL BACKGROUND

Fullmer's applications were denied initially and on reconsideration.  After two hearings and a consultative evaluation, ALJ Atkins issued a decision on August 16, 2004 which found that Fullmer was not disabled.  She appealed and the Appeals Council remanded the case to the administrative law judge.  On remand, the case was assigned to ALJ Jones, who held a hearing

and issued a decision on December 22, 2005 which again found that Fullmer was not disabled. The Appeals Council denied Fullmer's request for review, making ALJ Jones' decision the final order of the agency, which Fullmer appeals to this court.

## THE ALJ'S DECISION

The ALJ found that Fullmer had a severe impairment of mild degenerative changes of the lumbar spine and nonsevere impairments of abdominal pain of unknown etiology; possible irritable bowel; undifferentiated somatoform disorder versus conversion disorder; dysthymic disorder; and personality disorder NOS, passive-aggressive type with narcissistic, antisocial, and borderline personality features. However, the ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. After reviewing the medical record and the lay testimony, including from Fullmer, the ALJ found that Fullmer retained the residual functional capacity to perform a modified range of light exertion work activity; could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand and/or walk for six hours out of an eight-hour workday; could sit for six hours in an eight-hour workday; could push and/or pull without limitation beyond the weight limitations given; could frequently balance and stoop; and could occasionally climb, kneel, crouch, and crawl. Based on vocational expert testimony, the ALJ found that Fullmer could return to her past work as a website monitor and also was not disabled under the Medical Vocational Guidelines, known as "the grids." Thus, the ALJ found that Fullmer was not disabled under the Act.

## FACTS

Fullmer, who was 37 years old at the time of the last decision, has a GED and has worked as an auto supply store assistant manager, day care worker, production assembly worker, and website monitor/observer.  Fullmer alleges she has been disabled since May 1, 2001 due to back, left leg, hip, knee and ankle pain along with problems with depression and a conversion or somatoform disorder.  She was laid off from her last job as a website monitor/observer on January 31, 2001.  Fullmer agrees that disability was not a factor in leaving this job but she worked from home.  Fullmer alternated working two hours with a three hour break, for a total of six hours work a day.

Fullmer describes her pain as starting to the left of her tailbone, going over to the left hip, and continuing down her entire leg.  She also complains of numbness in the left leg.  With medication, Fullmer describes her pain as four or five out of ten on a good day and eight to ten out of ten on a bad day.  Bad days are caused by extra activity, such as during a holiday period.  For pain relief, Fullmer wears a narcotic skin patch and uses a second narcotic for breakthrough pain.  Fuller lives with her husband.  At times, she and her husband lived with her parents and at other times, her family lived close enough to come over and help.  She can only do a few of the household chores or her pain flares up.  Her limited chores can only be done for 15 minutes at a time with 20 to 30 minute rest periods in between.  Fullmer takes a two or three hour nap every day and lies down most of the rest of the time to relieve the pain.  The pain only allows Fullmer to sleep for two to three hours at a time at night, then remaining awake for one to four hours before falling back to sleep.

Dr. Rambousek, Fullmer's primary care physician, wrote a letter on December 11, 2001 stating that he believed Fullmer had been completely disabled since summer 2001 due to her back pain and her need to alter position frequently for comfort. He updated the letter on May 2, 2006 with his opinion unchanged. Multiple MRIs showed a slight bulge of one of Fullmer's disks but otherwise unremarkable.

## DISCUSSION

Although Fullmer objects to several parts of the ALJ's decision, I will only address one because it is dispositive. Based on the opinion of Dr. Dickinson, Fullmer objects to the ALJ's finding that her mental impairments were nonsevere. She also objects to the ALJ's failure to give any reasons at all for rejecting Dr. Dickinson's findings.

The Commissioner argues that the ALJ did not reject Dr. Dickinson's opinion because the doctor found that Fullmer only had mild symptoms and could perform work. I am not persuaded by the Commissioner's interpretation of Dr. Dickinson's opinion.

Dr. Dickinson performed a neuropsychological screening examination of Fullmer on July 1, 2005 during which he conducted a clinical interview and administered numerous written psychological tests. He diagnosed an undifferentiated somatoform disorder versus conversion disorder; dysthymic disorder; and personality disorder NOS, passive-aggressive type with narcissistic, antisocial, and borderline personality features. He summarized:

> Drawing from a lifetime of behavioral history in addition to impressions during her evaluation and the results of her MMPI-2 administration, Heidi was found to have had a personality disorder, passive-aggressive type that greatly influenced her overall outlook and also beliefs about herself, others and her community. Her best course of action would be [to] move away from treatment with pain medications while renewing her efforts with physical rehabilitation and also seeking mental health treatment with both antidepressant medication and

cognitive-behavioral therapy.  *Similar others have shown significant progress when receiving those treatment services while Heidi likely could return to employment within a short period of time.  Unfortunately Heidi's personality disorder also could influence her in choosing not to follow through with seeking out and actively participating in medical and mental health treatment.  If the applicant chose not [to] follow the recommendations of her treatment providers her outcome would likely not be favorable* although it would be most helpful if Mrs. Fullmer's medical providers ceased to prescribe narcotic pain medications in the absence of medical evidence of chronic pain.

Tr. 352 (emphasis added).  Dr. Dickinson also found that Fullmer had a slight restriction in her ability to interact appropriately with the public, supervisors, and co-workers.  He closed with, "Heidi's personality disorder would respond to [cognitive behavior] therapy [with a] clinician who works [with personality disorders].  She is employable and a structured routine would be of benefit to her."  Tr. 355.

On first glance, it appears that Dr. Dickinson believed that Fullmer was employable at the time of his examination.  I do not believe that this is the correct interpretation, however.  I interpret the summary quoted above to mean that Dr. Dickinson believed Fullmer could return to work after receiving treatment, if she chose to participate.  If the personality disorder prevented Fullmer from actively participating in treatment, Dr. Dickinson did not expect Fullmer to have a favorable outcome, meaning that she could not return to work.

Based on this interpretation, the ALJ should have found that Fullmer's mental impairments were severe impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).

Moreover, the ALJ was required to either adopt Dr. Dickinson's opinion or give reasons for rejecting it.  If a treating or examining physician's opinion is not contradicted by another

physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

I find that the ALJ did not properly reject Dr. Dickinson's opinion when he gave no reasons to do so. The next issue is the appropriate remedy.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

The "crediting as true" doctrine resulting in an award of benefits is not mandatory in the Ninth Circuit, however. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003). The court has the flexibility to remand to allow the ALJ to make further determinations, including reconsidering the credibility of the claimant. Id. On the other hand, "in the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations

established by the improperly discredited testimony, remand for an immediate award of benefits is appropriate." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004).

Fullmer's case was already remanded by the Appeals Council. I am not going to delay her benefits any further. I conclude that it is clear from the record that Fullmer would be found disabled if Dr. Dickinson's opinion was properly credited.

## CONCLUSION

The decision of the Commissioner is reversed. The case is remanded for a finding of disability.

IT IS SO ORDERED.

Dated this _____7th_____ day of May, 2008.


_____/s/ Garr M. King_____
Garr M. King
United States District Judge

Page 10 - OPINION AND ORDER